IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:       :

      :     CHAPTER 13

DONNA LYNN JOHNSON,     :

      :     CASE NO. 24-60364-PMB

    Debtor.       :

      :

SOUTHSTATE BANK, N.A. f/k/a     :
HABERSHAM BANK,     :

      :

    Movant,       :

      :

    v.       :

      :

DONNA LYNN JOHNSON,     :     CONTESTED MATTER

      :

    Debtor,       :

      :

    and       :

      :

LISA M. SCHULTZ,     :

      :

    Co-Debtor.       :

## NOTICE OF HEARING

        **PLEASE TAKE NOTICE** that **SouthState Bank, N.A. f/k/a Habersham Bank** has filed **a Motion to Modify Automatic Stay and Co-Debtor Stay** and related papers with the Court seeking an order seeking to terminate the automatic stay and co-debtor stay.

        **PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the **Motion to Modify Automatic Stay and Co-Debtor Stay** at **9:00 a.m.** on **March 26, 2026** in **Courtroom 1202**, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, which must be attended in person, unless the Court orders otherwise.

        Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the

Clerk before the hearing.  The address of the Clerk's Office is Clerk, U.S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, Atlanta, Georgia 30303.  You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the Motion and agrees to a hearing on the earliest possible date.  Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated:  February 11, 2026

/s/ Thomas E. Austin, Jr.
Thomas E. Austin, Jr.
Georgia Bar No. 028835
Attorney for SouthState Bank, N.A.
Thomas E. Austin, Jr., LLC
2451 Cumberland Parkway SE
Suite 3504
Atlanta, Georgia  30339
(404) 814-3755
taustin@taustinlaw.com

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                                          :
                                                :   CHAPTER 13
DONNA LYNN JOHNSON,                             :
                                                :   CASE NO. 24-60364-PMB
    Debtor.                                   :
                                                :
SOUTHSTATE BANK, N.A. f/k/a                     :
HABERSHAM BANK,                                 :
                                                :
    Movant,                                   :
                                                :
    v.                                        :
                                                :
DONNA LYNN JOHNSON,                             :   CONTESTED MATTER
                                                :
    Debtor,                                   :
                                                :
    and                                       :
                                                :
LISA M. SCHULTZ,                                :
                                                :
    Co-Debtor.                                :

## MOTION TO MODIFY AUTOMATIC STAY AND CO-DEBTOR STAY AND WAIVER OF STAY OF ORDER UNDER BANKRUPTCY RULE 4001(a)(3)

COMES NOW SouthState Bank, N.A. f/k/a Habersham Bank (hereinafter referred to as "SSB"), a creditor of the above-named Debtor, and hereby files this its Motion to Modify Automatic Stay and Co-Debtor Stay and Waiver of Stay of Order Under Bankruptcy Rule 4001(a)(3), and, in support thereof, respectfully shows this Court as follows:

1.

Donna Lynn Johnson (the "Debtor") filed her voluntary petition for relief under Chapter 13 of Title 11 of the United States Code on October 1, 2024.

2.

The Bankruptcy Court has jurisdiction over this proceeding pursuant to 28 U.S.C. Section 157 and 11 U.S.C. Sections 362 and 1301.

3.

Melissa J. Davey is the duly designated Chapter 13 Trustee.

4.

SSB holds a valid, properly perfected second priority security interest in the Debtor's tract or parcel of land lying and being in Land Lot 466 of the 21st District, 2nd Section, Cherokee County, Georgia, being Lot 55, Cherokee Mills Estates, and more commonly known as 616 Apache Trail, Woodstock, Georgia 30189 (the "Real Property") by virtue of a Home Equity Variable Draw Agreement dated March 2, 2006 (the "Note"), a copy of which is attached hereto as Exhibit "A", and by virtue of a Deed to Secure Debt, a copy of which is attached hereto as Exhibit "B".

5.

The Co-Debtor, Lisa M. Schultz, is a co-maker on the Note.

6.

The Debtor's confirmed Post-Confirmation Modification of Plan and Request for its Approval filed on October 2, 2025 (Doc. 40) provided that the Debtor shall retain the Real Property and make direct payments to SSB on the Debtor's future post-petition payments. As of February 9, 2026, Debtor and Co-Debtor were current on their payments to SSB. Moreover, there was no pre-petition arrearage due to SSB by Debtor at the time Debtor filed her Chapter 13 case. On March 6, 2026, however, Debtor and Co-Debtor's Note matures, and the entire remaining balance owed under the Note will be due on that date. SSB's security interest in the Real Property is not adequately protected, and the automatic stay pursuant to 11 U.S.C. Section 362 should be terminated for cause.

7.

As of February 9, 2026, the Debtor and Co-Debtor owed the principal balance in the amount of $25,164.91, interest in the amount of $108.38, and legal fees from previous law firms representing SSB in the amount of $17,937.66, for a total amount due of $43,210.95. SSB's security interest in the Real Property is not adequately protected, and the automatic stay pursuant to 11 U.S.C. Section 362 should be terminated for cause.

8.

There is equity in the Real Property. According to the Debtor's Schedule D, the Real Property is valued at $800,000.00. There is a first priority secured party with a security interest in the Real Property, Faye Servicing, LLC ("Faye"), and the Debtor's Schedule D shows that Faye's claim is in the amount of $243,685.00.

9.

SSB has no information concerning the status of insurance coverage on the Real Property. Upon information and belief, neither the Debtor nor the Co-Debtor have insurance coverage on the Real Property. SSB's security interest in the Real Property is not adequately protected, and the automatic stay pursuant to 11 U.S.C. Section 362 should be terminated for cause.

10.

SSB shows this Court that the above-described collateral is burdensome to the estate and of inconsequential value and should be abandoned.

11.

SSB will be irreparably harmed if the Co-Debtor stay in effect on the Co-Debtor, Lisa M. Schultz, is continued.

12.

Pursuant to 11 U.S.C. §1301(c)(3), cause exists for granting SSB relief from the Co-Debtor stay so as to allow SSB to pursue the Co-Debtor, Lisa M. Schultz, for any balance not paid by the

Debtor.

13.

Pursuant to Bankruptcy Rule 4001(a)(3), an order granting a motion for relief from the automatic stay is stayed until the expiration of fourteen (14) days after the entry of the order "unless the court orders otherwise". SSB respectfully requests that the fourteen (14) day stay of the Order pursuant to Bankruptcy Rule 4001(a)(3) be waived, and this Order be deemed effective immediately on the date of the entry of the Order.

WHEREFORE, SouthState Bank, N.A. f/k/a Habersham Bank moves this Court for an Order terminating the automatic stay pursuant to 11 U.S.C. §362 to permit SSB to exercise its rights pursuant to relevant state law and the Security Deed as to the Real Property, including, but not limited to, conducting a non-judicial foreclosure sale, for relief from the Co-Debtor stay as to the Co-Debtor, Lisa M. Schultz, alternatively converting the case to Chapter 7 of Title 11 of the United States Code so that the Real Property can be sold by a Chapter 7 Trustee, waiving the fourteen (14) day stay of the entry of the Order provided under Bankruptcy Rule 4001(a)(3), and for such other and further relief as the Court deems just and appropriate.

RESPECTFULLY SUBMITTED, this 11th day of February, 2026.

/s/ Thomas E. Austin, Jr.
Thomas E. Austin, Jr.
Georgia Bar No. 028835
Attorney for SouthState Bank, N.A.
f/k/a Habersham Bank

Thomas E. Austin, Jr., LLC
2451 Cumberland Parkway, SE
Suite 3504
Atlanta, Georgia  30339
(404) 814-3755
taustin@taustinlaw.com

| HABERSHAM BANK · CANTON<br>1925 MARIETTA HWY<br>CANTON, GA 30114 | LISA M. SCHULTZ; DONNA L. JOHNSON<br>616 APACHE TRAIL<br>WOODSTOCK, GA 30189 | Loan Number _____<br>Agreement Date 03-02-2006<br>Credit Limit $82,500.00<br>Maturity Date 03-02-2026<br>LO<br>LP |
| Lender | Borrower | |

## HOME EQUITY (PRIME) 0204

**1. DEFINITIONS.** In this Agreement, these terms have the following meanings.

**A. Pronouns.** The pronouns "I," "me" and "my" refer to all Borrowers signing this Agreement, jointly and individually, and each other person or legal entity that agrees to pay this Agreement. "You" and "your" refer to the Lender, or any person or legal entity that acquires an interest in the Line of Credit.

**B. Agreement.** Agreement refers to this HOME EQUITY (PRIME) 0204 _____, and any extensions, renewals, modifications or substitutions of it.

**C. Billing Cycle.** Billing Cycle means the interval between the days or dates of regular periodic statements.

**D. Credit Limit.** Credit Limit means the maximum amount of principal you will permit me to owe you under this Line of Credit, at any one time. My Credit Limit is stated at the top of this Agreement.

**E. Line of Credit.** Line of Credit refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures, and this Agreement.

**F. Loan Account Balance.** Loan Account Balance means the sum of the unpaid principal balance advanced under the terms of this Agreement, finance charges, fees, and other charges that are due, and other amounts advanced to me or others under the terms of this Line of Credit.

**G. Property.** Property means any real or personal property that secures my obligations under this Line of Credit.

Other important terms are defined throughout this Agreement.

**2. PROMISE TO PAY.** I promise to pay to you or your order, at your address, or at such other location as you may designate, so much of the Credit Limit as may be advanced under this Agreement, plus finance charges, fees, charges, costs, and expenses as described in this Line of Credit.

**3. AGREEMENT TERM.** This Agreement begins on the Agreement Date and continues until the Maturity Date. I may request advances for 20 YEARS _____ (Draw Period) beginning on the Agreement Date.

**4. ADVANCES.** I may request advances by the following methods:

A. ☐ I write a _____

_____

B. ☐ I draw my transaction account below $_____ (Triggering Balance).   Transaction account number _____

C. ☒ I request a withdrawal IN PERSON, BY PHONE OR CHECK _____

D. ☐ I make a purchase or withdrawal with my _____

E. ☐ I authorize you to make a payment to a third person or another account.

You will make the advance by advancing the amount directly to me, depositing it in my transaction account, or by paying a designated third person or account. You will record the amount as an advance and increase my Loan Account Balance.

**5. ADVANCE LIMITATIONS.** You do not have to make any advances during any period in which I have a right to cancel. My ability to request and access advances is also subject to the following additional limitations.

A. ☒ Initial Advance. On 03-07-2006 _____ I will receive an Initial Advance of $80,290.00 _____.

B. Minimum Advance. Subject to the limitations contained in this Agreement, when I request an advance:
YOU WILL ADVANCE EXACTLY THE AMOUNT I REQUEST.

C. ☐ Maximum Amount of Advances. I may not request advances totaling more than $_____ per _____.

D. ☐ Maximum Number of Advances. I may not request more than _____ advances per _____.

**6. ☐ MINIMUM BALANCE.** I agree to maintain a principal balance outstanding during the term of this Agreement of at least $_____ (Minimum Balance).

**7. CREDIT LIMIT.** Subject to the terms and conditions of this Agreement, I may borrow on this Line of Credit up to the Credit Limit. I agree not to request or obtain an advance that will cause the unpaid principal of my Loan Account Balance to exceed the Credit Limit. I understand that you will not ordinarily grant a request for an advance that would cause the unpaid principal of my Loan Account Balance to be greater than the Credit Limit, but that you may, at your option, grant such a request without obligating yourselves to do so in the future. My Credit Limit will not be increased if I overdraw the Line of Credit. If I exceed the Credit Limit, I agree to pay the amount by which the unpaid principal of my Loan Account Balance exceeds the Credit Limit immediately, even if you have not yet billed me. Any sums in excess of the Credit Limit will not be secured by the Property, unless they are for accrued but unpaid interest or expenditures made pursuant to the security instrument securing the Property.

**8. COMPUTATION OF FINANCE CHARGES.** Finance charges begin to accrue immediately when you make an advance to me. Finance charges will be computed as follows:
TO FIGURE THE FINANCE CHARGE FOR EACH BILLING CYCLE, A DAILY PERIODIC RATE IS MULTIPLIED BY THE DAILY BALANCE OF MY LOAN ACCOUNT BALANCE EACH DAY. TO FIGURE THE DAILY BALANCE, YOU FIRST TAKE MY LOAN ACCOUNT BALANCE AT THE BEGINNING OF EACH DAY, AND ADD ANY NEW ADVANCES, AND SUBTRACT ANY PAYMENTS OR CREDITS THAT APPLY TO DEBT REPAYMENT, AND ANY UNPAID FINANCE CHARGES, FEES, AND CHARGES. THIS GIVES YOU THE DAILY BALANCE.

**9. PERIODIC RATE AND ANNUAL PERCENTAGE RATE.** The periodic rate used in calculating the **FINANCE CHARGE** is 0.020833% and the corresponding **ANNUAL PERCENTAGE RATE** is 7.604%. The annual percentage rate includes interest and not other costs.

**10. VARIABLE RATE.** The annual percentage rate may change. It will be based on the value of the Index described as the:
THE BASE RATE ON CORPORATE LOANS POSTED BY AT LEAST 75% OF THE NATION'S 30 LARGEST BANKS KNOWN AS THE WALL STREET JOURNAL PRIME RATE

plus 0.000 percentage points.

A. ☒ Rounding. This rate will be rounded TO THE NEAREST .125.

B. Rate Changes. The annual percentage rate may increase if the Index rate increases. An Index rate increase will result in a higher finance charge and it may have the effect of increasing my periodic Minimum Payment. A decrease in the Index rate will have the opposite effect as an increase. An Index rate increase or decrease will take effect ON THE SAME DAY AS THE INDEX CHANGE _____. The annual percentage rate can increase or decrease DAILY _____ (☒ after remaining fixed for 1 DAYS _____). If the Index rate changes more frequently than the annual percentage rate, you will use the Index rate in effect on the day you adjust the annual percentage rate to determine the new annual percentage rate. In such a case, you will ignore any changes in the Index rate that occur between annual percentage rate adjustments.

C. ☐ Carryover. Any annual percentage rate increases or decreases not implemented by you either because of periodic, annual or lifetime rate caps, or because of a statutory limitation, may be carried over to subsequent rate adjustment periods and may be implemented to the extent not offset by opposite movement in the Index rate. If this occurs, the annual percentage rate will not relate to the Index rate in the manner described. When you have adjusted the annual percentage rate to take advantage of all increases or decreases in the Index rate, the initial relationship between the Index rate and the annual percentage rate will resume.

D. Rate Change Limitations. Annual percentage rate changes are subject to the following limitations. Initial discount or premium rates are not taken into consideration in applying interest rate limitations.

(1) ☐ Periodic Limits. The **ANNUAL PERCENTAGE RATE** cannot increase by more than _____ percentage points (☐ or decrease by more than _____ percentage points) _____.

(2) ☐ Lifetime Floor. The **ANNUAL PERCENTAGE RATE** will never be lower than: _____

(3) Lifetime Cap. The **ANNUAL PERCENTAGE RATE** will never be higher than: 18.000%

**11. FEES AND CHARGES.** I agree to pay, or have paid, the fees and charges listed in the FEES APPENDIX that appears at the end of this Agreement.

Expere, Home Equity Variable Draw Agreement   FORM HE-V-D 2/20/2004 V06.20
©2000 Bankers Systems, Inc., ST. CLOUD, MN                                          (page 1)



*EXHIBIT "A"*

**12. PAYMENT DATE.** During the term of this Agreement, a Minimum Payment will be due on or before the Payment Date indicated on my periodic statement for any Billing Cycle in which there is an outstanding balance on my account. My Minimum Payments will be due: MONTHLY

**13. MINIMUM PAYMENT.** On or before each Payment Date, I agree to make a payment of at least the Minimum Payment amount. The Minimum Payment will equal the following:

1.000% OF THE LOAN ACCOUNT BALANCE ON THE LAST DAY OF THE BILLING CYCLE.

A. ☒ Rounding. The Minimum Payment will be rounded TO THE NEAREST .01

B. ☐ Payment Of Balance. If my Loan Account Balance at the end of a Billing Cycle is less than $_____ my Minimum Payment will equal the entire outstanding Loan Account Balance.

C. Payment At Maturity. On the Maturity Date I must pay the entire outstanding Loan Account Balance.

**14. ☒ PRINCIPAL REDUCTION.** The Minimum Payment ☐ will not reduce ☒ may not fully repay the principal balance outstanding on my Loan Account Balance.

**15. ☒ FINAL PAYMENT.** At maturity, I ☒ may have to ☐ will repay the entire outstanding Loan Account Balance in a single payment. At that time you may, but are not obligated to, refinance this Line of Credit. If you do refinance this Line of Credit at maturity, I understand that I may have to pay some or all of the closing costs normally associated with a new loan.

**16. ADDITIONAL PAYMENT TERMS.** If my Loan Account Balance on a Payment Date is less than the Minimum Payment amount, I must pay only the amount necessary to reduce my Loan Account Balance to zero or to any required Minimum Balance. If I otherwise fail to fully pay the Minimum Payment amount, you may, but are not required to, advance money to me to make the payment. All the terms of this Agreement will apply to such an advance. Subject to any required Minimum Balance, I can pay off all or part of what I owe at any time. I must continue to make my periodic Minimum Payment so long as I owe any amount. Unless otherwise agreed or required by applicable law, payments and other credits will be applied first to any charges I owe other than principal and finance charges, then to any finance charges that are due, and finally to principal. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment.

**17. ☐ NEGATIVE AMORTIZATION.** Under some circumstances, my payments will not cover the finance charges that accrue and negative amortization will occur. Negative amortization will increase the amount that I owe you and reduce my equity in my home. In the event that negative amortization occurs, the unpaid portion will be:

**18. SECURITY.** You have secured my obligations under this Line of Credit by taking a security interest (by way of a separate security instrument dated 03-02-2006 ) in the following Property:

2ND MTG TO RE IN LL 466, 21ST DIST, 2ND SECT, CHEROKEE CO, CONT 1.12 ACRES, +/-, LOT 55, CHEROKEE MILLS ESTATES, W/ PRIM DWLG AT 616 APACHE TRAIL, WOODSTOCK, GA, AS EVID BY DSD DATED 05/13/05, REC IN DB 7967, PG 292-295.

Property securing any other loans that I have with you may also secure this Agreement.

**19. PROPERTY INSURANCE.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing this Line of Credit. I may obtain property insurance from anyone I want that is reasonably acceptable to you. If I get the insurance from or through you, I will pay $_____ for _____ of coverage.

**20. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**21. DEFAULT.** I will be in default if any of the following occur.

A. Payments. I fail to make a payment as required by this Agreement.

B. Property. My action or inaction adversely affects the Property or your rights in the Property.

C. ☒ Fraud. I engage in fraud or material misrepresentation in connection with this Line of Credit.

**22. REMEDIES.** After I default, and after you give any legally required notice and opportunity to cure, you may at your option do any of the following:

A. Termination and Acceleration. You may terminate this Line of Credit and make all or any part of the amount owing by the terms of this Agreement immediately due.

B. Advances. You may temporarily or permanently prohibit any additional advances.

C. Credit Limit. You may temporarily or permanently reduce the Credit Limit.

D. Additional Security. You may demand additional security or additional parties to be obligated to pay this Agreement.

E. Insurance Benefits. You may make a claim for any and all insurance benefits or refunds that may be available on my default.

F. Payments Made On My Behalf. You may make amounts advanced on my behalf immediately due, and you may add these amounts to the Loan Account Balance.

G. Sources. You may use any and all remedies you have under applicable law or any agreement securing this Agreement.

Except as otherwise required by law, by choosing a remedy you do not give up your right to use another remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**23. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after default, to the extent permitted by law, I agree to pay the following: ALL EXPENSES OF COLLECTION, ENFORCEMENT OR PROTECTION OF YOUR RIGHTS AND REMEDIES UNDER THIS AGREEMENT. EXPENSES INCLUDE, BUT ARE NOT LIMITED TO, ATTORNEYS' FEES, COURT COSTS, AND OTHER LEGAL EXPENSES. IF THIS DEBT IS COLLECTED BY OR THROUGH AN ATTORNEY AFTER MATURITY, I AGREE TO PAY 15 PERCENT OF THE PRINCIPAL AND INTEREST OWING AS ATTORNEY FEES. THESE EXPENSES ARE DUE AND PAYABLE IMMEDIATELY. IF NOT PAID IMMEDIATELY, THESE EXPENSES WILL BEAR INTEREST FROM THE DATE OF PAYMENT UNTIL PAID IN FULL AT THE HIGHEST INTEREST RATE IN EFFECT AS PROVIDED FOR IN THE TERMS OF THIS AGREEMENT. ALL FEES AND EXPENSES WILL BE SECURED BY THE PROPERTY I HAVE GRANTED TO YOU, IF ANY. TO THE EXTENT PERMITTED BY THE UNITED STATES BANKRUPTCY CODE, I AGREE TO PAY THE REASONABLE ATTORNEYS' FEES YOU INCUR TO COLLECT THIS DEBT AS AWARDED BY ANY COURT EXERCISING JURISDICTION UNDER THE BANKRUPTCY CODE.

**24. SUSPENSION OF CREDIT AND REDUCTION OF CREDIT LIMIT.** You may temporarily prohibit me from obtaining additional advances or reduce my Credit Limit during any period in which any of the following are in effect.

A. The value of the Property securing this Line of Credit declines significantly below its appraised value for purposes of this Line of Credit;

B. You reasonably believe that I will not be able to meet the repayment requirements under my Line of Credit due to a material change in my financial circumstances;

C. I am in default of a material obligation under this Line of Credit. I understand, that you consider all of my obligations to be material. Categories of obligations that you consider material include, but are not limited to: my obligation to not commit fraud or misrepresentation in connection with this Line of Credit; my obligation to meet the repayment terms of this Line of Credit; my obligation to not adversely affect the Property or your rights in the Property; my obligation to pay fees and charges; my advance obligations; my obligation to fulfill the terms of the instrument securing this Agreement, and any other security instruments on the Property; my obligation to notify you; and my obligation to provide you with information;

D. Government action prevents you from imposing the annual percentage rate provided for in this Agreement;

E. The priority of your security interest is adversely affected by government action to the extent that the value of the security interest is less than 120 percent of my Credit Limit;

F. The maximum annual percentage rate allowed under this Agreement is reached;

G. You are notified by a regulatory agency that continued advances constitute an unsafe and unsound practice; or

H. Any Borrower requests a suspension of credit privileges.

In order to reinstate my credit privileges under the original terms of this Agreement, I must send you a written request to that effect. My credit privileges will only be reinstated if you determine that the condition which caused you to prohibit additional extensions and/or reduce the Credit Limit no longer exists. If appraisal or credit report fees are incurred in making this determination, you may (if allowed by applicable law) charge me such fees. If credit privileges were suspended at my request, they need not be reinstated unless all Borrowers request reinstatement.

**25. SET-OFF.** You may set-off any amount due and payable under the terms of this Agreement against my right to receive money from you, unless prohibited by applicable law. For example, your right of set-off will not apply if I may obtain credit under this Agreement by using a credit card.

Experta, Home Equity Variable Draw Agreement    FORM HE-V-D 2/20/2004
©2000 Bankers Systems, Inc., ST. CLOUD, MN

(page 2)

**26. AMENDMENTS.** Generally, the terms of this Agreement cannot be changed. You may, however, make the following changes:

A. You may make changes that I agree to in writing at the time of the change.

B. You may make changes that will unequivocally benefit me.

C. You may make insignificant changes.

D. You may change the Index and margin if the original Index becomes unavailable. Any new index will have an historical movement substantially similar to the original Index, and together with the new margin, produce an annual percentage rate substantially similar to the rate in effect at the time the original Index became unavailable.

E. You may make changes that are described elsewhere in this Agreement.

**27. TERMINATION.** I may terminate this Line of Credit at any time upon written notice to you. Termination by one Borrower terminates the Line of Credit for all Borrowers. Termination will not affect my obligation to repay advances made prior to the termination, nor will it alter my duties to perform under the terms of an instrument securing this Agreement until such instrument is released. Upon termination I will return to you any remaining access devices in my possession that were issued or used in connection with the Line of Credit.

**28. WAIVERS AND CONSENT.** To the extent not prohibited by law and except for any required notice of right to cure for the failure to make a required payment, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor. To the extent not prohibited by law, I and any other party to this Line of Credit, also consent to the following actions that you may take, and waive defenses that may be available based on these actions, or based on the status of a party to this Line of Credit.

A. You may renew or extend payments on this Agreement, regardless of the number of such renewals or extensions.

B. You may release any Borrower or other person who may be liable for the indebtedness under this Agreement.

C. You may release, substitute or impair any Property securing this Agreement.

D. You may invoke your right of set-off.

E. You may enter into any sales or repurchases of this Agreement to any person in any amounts and I waive notice of such sales or repurchases.

F. I agree that any Borrower is authorized to modify the terms of this Agreement or any other Line of Credit document.

G. You may inform any party who guarantees this Line of Credit of any loan accommodations, renewals, extensions, modifications, substitutions, or future advances.

No delay or forbearance on your part in exercising any of your rights or remedies will be construed as a waiver by you, unless such waiver is in writing and is signed by you.

**29. TAX DEDUCTIBILITY.** I should consult a tax advisor regarding the deductibility of interest and charges under this Line of Credit.

**30. PERIODIC STATEMENTS.** If I have an outstanding balance on my account or have any account activity, you will send me a periodic statement at the end of each Billing Cycle. This periodic statement will reflect, among other things, credit advances, finance charges, other charges, payments made, other credits, my previous account balance and my new account balance. The periodic statement will also identify my Minimum Payment for the cycle and the date it is due (Payment Date).

**31. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay this Line of Credit is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on this Line of Credit, or any number of us together, to collect on this Line of Credit. Extending this Line of Credit or new obligations under this Line of Credit, will not affect my duty under this Line of Credit and I will still be obligated to pay this Line of Credit. The duties and benefits of this Line of Credit will bind and benefit the successors and assigns of you and me.

**32. INTEGRATION AND SEVERABILITY.** This Agreement is the complete and final expression of the agreement. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**33. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**34. NOTICE, FINANCIAL REPORTS, AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address above, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Line of Credit and to confirm your lien status on any Property. Time is of the essence.

**35. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably feel you need to decide whether to continue this Line of Credit. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**36. APPLICABLE LAW.** This Agreement is governed by:
THE LAWS OF GEORGIA, THE UNITED STATES OF AMERICA AND, TO THE EXTENT REQUIRED, BY THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED.

**37. OTHER TERMS.** If checked, the following addenda are attached to and made a part of this Agreement:

A. ☐ Automatic Withdrawal

B. ☐ Conversion Option

C. ☐ Credit Insurance

D. ☐ Initial Rate

E. ☐ Preferred Rate

F. ☒ $50 MINIMUM PAYMENT

**38. ADDITIONAL TERMS.**

I WAIVE MY RIGHT TO THE BENEFIT OF EXEMPTION AS TO MY PROPERTY SECURING, OR TO SECURE, THIS AGREEMENT.

**SIGNATURES.** I understand that terms following a ☐ only apply if checked. By signing, I agree to the terms of this Agreement and acknowledge receipt of a copy of this Agreement.

**BORROWER:**

X _____  X _____  X _____
LISA M. SCHULTZ               DONNA L. JOHNSON

X _____  X _____  X _____

**LENDER:**

X _____
TINA RATCLIFF, LENDER

**MY BILLING RIGHTS**
**KEEP THIS NOTICE FOR FUTURE USE**

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

**Notify You In Case of Errors or Questions About My Bill**

If I think my bill is wrong, or if I need more information about a transaction on my bill, I will write you at the address listed on my bill. I will write to you as soon as possible. You must hear from me no later than 60 days after you sent me the first bill on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I will give you the following information: (a) My name and account number, (b) The dollar amount of the suspected error, (c) Describe the error and explain, if I can, why I believe there is an error. If I need more information, I will describe the item I am not sure about.

If I have authorized you to pay my bill automatically from my savings, checking, share draft or other account, I can stop the payment on any amount I think is wrong. To stop the payment my letter must reach you three business days before the automatic payment is scheduled to occur.

Experã Home Equity Variable Draw Agreement   FORM HE-V-D 2/20/2004
©2000 Bankers Systems, Inc., ST. CLOUD, MN



(page 3)

When recorded return to:

**JOHNSON, DICKENSON & EVANS, LLC**
P.O. BOX 4488
CANTON, GA 30114-4488
FILE #2644-JD5



Filed in 6/9/2005 8:34:00 AM Office Clerk of Superior
Court Cherokee County, GA  Deed BK 7967 Page 292 -
295, Intangible Tax $255.00 Patty Baker #1

_____State of Georgia_____Space Above This Line For Recording Data_____

# DEED TO SECURE DEBT
*(With Future Advance Clause)*

1. **DATE AND PARTIES.** The date of this Deed to Secure Debt (Security Instrument) is MAY 13th, 2005 and the parties, their addresses and tax identification numbers, if required, are as follows:

   **GRANTOR:** LISA M. SCHULTZ aka LISA SCHULTZ
   DONNA L. JOHNSON aka DONNA JOHNSON
   616 APACHE TRAIL
   WOODSTOCK, GA 30189

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.

   **GRANTEE:** HABERSHAM BANK
   ("Lender")   ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF GEORGIA
   1925 MARIETTA HWY
   CANTON, GA 30114

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, bargains, transfers, conveys and sells to Lender, with power of sale, the following described property:

   **ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 466 OF THE 21ST DISTRICT, 2ND SECTION, CHEROKEE COUNTY, GEORGIA, BEING LOT 55, CHEROKEE MILLS ESTATES, AS PER PLAT RECORDED IN PLAT BOOK 24, PAGE 58, CHEROKEE COUNTY, GEORGIA RECORDS, SAID PLAT BEING INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.**

   The property is located in  CHEROKEE____  at  616 APACHE TRAIL, WOODSTOCK, GA 30189
   _____(County)_____(Address, City & Zip Code)_____

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as 'Property').

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ 85,000.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*
   NOTE DATED MAY 13, 2005 FROM LISA M. SCHULTZ aka LISA SCHULTZ AND DONNA L. JOHNSON aka DONNA JOHNSON TO HABERSHAM BANK IN THE PRINCIPAL AMOUNT OF $85,000.00 WITH A MATURITY DATE OF MAY 13, 2025.

*(Page 1 of 4)*

GEORGIA – DEED TO SECURE DEBT (NOT FOR FNMA, FHLMC, FHA OR VA USE)

©1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDSD-GA 9/29/98

 

# *EXHIBIT "B"*

to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to convey Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

25. **WAIVERS.** Except to the extent prohibited by law, Grantor waives all homestead and other exemption rights provided for by the constitution and laws of Georgia relating to the Property.

26. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an Improvement on the Property.

☐ **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and Supplement and amend the terms of this Security Instrument.
☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other _____

☐ **Additional Terms.** GRANTOR AND GRANTEE AGREE, BY THIS AFFIRMATIVE STATEMENT PURSUANT TO O.C.G.A. SECTION 44-14-80, TO ESTABLISH A PERPETUAL OR INDEFINITE SECURITY INTEREST IN THE PROPERTY CONVEYED TO SECURE THE SECURED DEBT.

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1. IN WITNESS WHEREOF, Grantor has signed and sealed this Security Instrument.

_____ (Seal)        _____ (Seal)
(Signature)                  (Date)       (Signature)                  (Date)
LISA M. SCHULTZ aka LISA    05/13/05      DONNA L. JOHNSON aka        05/13/05
SCHULTZ                                    DONNA JOHNSON

Signed, sealed and delivered in the presence of:       Signed, sealed and delivered in the presence of:

_____                 _____
(Unofficial Witness)                       (Unofficial Witness)

_____                 _____
(Notary Public, _____ County, Georgia)   (Notary Public, _____ County, Georgia)

SEAL                                                        (Page 4 of 4)

                                                                          SEAL

©1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDSD-GA  9/29/98

## CERTIFICATE OF SERVICE

This is to certify that, on February 9, 2026, I served the foregoing "Motion to Modify Automatic Stay and Co-Debtor Stay and Waiver of Order Under Bankruptcy Rule 4001(a)(3)" and "Notice of Hearing" upon the following parties depositing a copy of same in an envelope with adequate postage affixed thereon to ensure delivery by United States first-class mail:

> Ms. Donna Lynn Johnson
> 616 Apache Trail
> Woodstock, Georgia  30189

This is to certify that I have this day also served the foregoing "Motion to Modify Automatic Stay and Co-Debtor Stay and Waiver of Order Under Bankruptcy Rule 4001(a)(3)" and "Notice of Hearing" upon the following parties using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case using the Bankruptcy Court's Electronic Case Filing program or via electronic mail:

> Brian S. Limbocker, Esq.
> Limbocker Law Firm, LLC
> Building 100 – Suite 140
> 2230 Towne Lake Parkway
> Woodstock, Georgia  30189
>
> Jonathan Clements, Esq.
> Counsel for Ms. Lisa M. Schultz
> 2801 Buford Highway
> Suite 115
> Atlanta, Georgia  30329
> (via jclements@kecklegal.com)
>
> Melissa J. Davey, Esq.
> Chapter 13 Trustee
> Suite 2250
> 233 Peachtree Street NE
> Atlanta, Georgia  30303

This 11th day of February, 2026.

/s/ Thomas E. Austin, Jr.
Thomas E. Austin, Jr.